FILED
CLERK, U.S. DISTRICT COURT

07/18/16

CENTRAL DISTRICT OF CALIFORNIA
BY: ___GR___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA ARREDONDO, | Case No. CV 15-01927-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

Plaintiff Diana Arredondo ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is REVERSED and the action is REMANDED for further proceedings consistent with this Order.

## II. PROCEEDINGS BELOW

On July 24, 2012, Plaintiff applied for DIB alleging disability beginning September 27, 2011. (Administrative Record ("AR") 150-56). Her application was denied initially on December 17, 2012, and upon reconsideration on June 21, 2013.

(AR 54-78.) On July 22, 2013, Plaintiff filed a written request for hearing, and a hearing was held on February 11, 2014. (AR 32-53, 100-01.) Represented by counsel, Plaintiff appeared and testified, along with an impartial medical expert and an impartial vocational expert ("VE"). (AR 35-52.) On April 10, 2014, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since September 27, 2011. (AR 16.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Plaintiff filed this action on September 20, 2015. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2011, the alleged onset date ("AOD"). (AR 12.) At **step two**, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine; type II diabetes; and obesity. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform a wide range of light work . . . , except the claimant is limited to lifting-carrying 20 pounds occasionally and 10 pounds frequently; is limited to sitting six hours and standing-walking six hours in an eight-hour workday with normal breaks; must be allowed to change position at the work station for one to three minutes every

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

> hour; and is limited to climbing ramps and stairs, bending, balancing, stooping, kneeling, crouching, and crawling occasionally, but can never climb ladders, ropes, and scaffolding; and must avoid concentrated exposure to unprotected heights and dangerous or fast moving machines.

(AR 13.)

At **step four**, based on Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff is capable of performing past relevant work in medical billing and collections. (AR 16.) Accordingly, the ALJ did not proceed to **step five**, and instead, found that Plaintiff has not been under a disability from the AOD through the date of the ALJ's decision. (*Id.*)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."

*Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff contends that the ALJ: (1) failed to properly consider the opinion of treating physician Harry L. Gibson, M.D.; (2) failed to make proper credibility findings; and (3) failed to properly assess her RFC. (Joint Stipulation for Social Security ("Joint Stip.") at 3-5, 7-14, 18-20, Dkt. No. 23.) The Commissioner contends that: (1) any error in not addressing Dr. Gibson's opinion was harmless; (2) the ALJ properly discounted Plaintiff's credibility; and (3) even if the RFC included the limitations assessed by Dr. Gibson, the VE testified that Plaintiff could perform other work. (Joint Stip. at 5-7, 14-18, 20-21.)

### A. The ALJ Erred In Not Considering Dr. Gibson's Opinion

Plaintiff argues that the ALJ "completely ignore[d]" Dr. Gibson's opinion that she could not lift over five pounds and that she requires a walker as an assistive device, and that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence for rejecting Dr. Gibson's opinion. (Joint Stip. at 3-5.) The Commissioner argues that any error in not addressing Dr. Gibson's opinion was harmless. (*Id.* at 5-7.) For the reasons set forth below, the Court agrees with Plaintiff.

#### *1. Dr. Gibson's Opinion*

Dr. Gibson completed a "Musculoskeletal" form on October 2, 2012. (AR 323-24.) He indicated that he had seen Plaintiff 12 times since December 29, 2009. (AR 323.) He diagnosed Plaintiff with lumbar pain. (*Id.*) He indicated 10 degrees

flexion and extension of the lumbar spine, with no swelling; absent reflexes at the patella and Achilles; motor strength 4 out of 5; and positive straight leg raise at 60 degrees in both the sitting and supine positions. (*Id.*) He opined that Plaintiff could not lift over 5 pounds. (AR 324.) He indicated that Plaintiff uses a walker due to prior lumbar surgery and chronic radiculitis. (*Id.*) In a treatment note also dated October 2, 2012, Dr. Gibson wrote that Plaintiff "clearly is eligible for Social Security as she is unemployable because of her disability." (AR 329.)

### 2. *Pertinent Law*

An ALJ is obligated to consider medical opinions of record, resolve conflicts, and analyze evidence. *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir. 1989); 20 C.F.R. § 404.1527(c). Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat. *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). A treating physician's opinion is generally entitled to greater weight than a non-treating physician's opinion, and an examining physician's opinion is generally entitled to greater weight than a non-examining physician's opinion. *See Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) (citations omitted). If a treating physician's opinion is contradicted by another medical opinion, an ALJ must give "specific and legitimate reasons" for rejecting it. *Orn*, 495 F.3d at 633. If a treating physician's opinion is not contradicted, it may be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830.

### 3. *Discussion*

The ALJ did not mention Dr. Gibson's opinion. The ALJ specifically discussed the opinions of the medical expert, the consultative examiner, and the State Agency medical consultants – all of whom opined that Plaintiff could perform a range of light work without an assistive device – and assigned great or substantial weight to each of those opinions. (AR 14-15, 43, 61-63, 73-77, 358.)

The Court concludes that the ALJ failed to discuss Dr. Gibson's opinion and set forth specific and legitimate reasons for rejecting it. "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13 (internal citation omitted); *see also Lingenfelter*, 504 F.3d at 1038 n.10 (An ALJ may not "avoid the[ ] requirements" of providing specific and legitimate reasons for rejecting a doctor's opinion "simply by not mentioning the treating physician's opinion.") Here, the ALJ erred in ignoring Dr. Gibson's opinion regarding Plaintiff's functional limitations, and giving no explanation for implicitly rejecting them.

The Commissioner argues that the ALJ's error was harmless because the VE testified that a person with the limitations opined by Dr. Gibson could perform the sedentary work of a billing clerk. (Joint Stip. at 6; AR 48.) At the hearing, Plaintiff's attorney asked the VE to assume a hypothetical person with the same age, education, and work experience as Plaintiff who could lift no more than five pounds and needed a walker for ambulation.[2] (AR 48.) The VE testified that he "believe[d] that the billing [clerk position] could still be performed at a sedentary level even with the five pound lifting restriction." (*Id.*) When asked if his testimony was consistent with the Dictionary of Occupational Titles ("DOT"),[3] the

---

[2] Dr. Gibson did not specify whether Plaintiff needed a walker for standing and/or walking. (AR 324.)

[3] "The best source for how a job is generally performed is usually the [DOT]." *Pinto v. Massanari*, 249 F.3d 840, 845-46 (9th Cir. 2001) (citations omitted). Moreover, the DOT "may be relied upon as the rebuttable presumptive authority regarding job classifications." *See Bell ex rel. Bell v. Colvin*, 2015 WL 3465764, at

6

VE answered: "Exception of the response to the attorney, which would be my professional opinion." (AR 48.)

The Commissioner's harmless error argument fails on this record because the Commissioner's burden at step five is not met. The VE did not testify regarding the number of billing clerk jobs available for a person who could lift no more than five pounds and needed to use a walker for ambulation.[4] (AR 48.) *See* 20 C.F.R. §404.1566 (work must exist in significant numbers in the national economy for a person with a claimant's physical or mental abilities and vocational qualifications for a determination that a claimant is not disabled). Furthermore, the DOT states that the billing clerk job involves "[e]xerting up to 10 pounds of force occasionally . . . and/or a negligible amount of force frequently . . . to lift, carry, push, pull, and otherwise move objects, . . . and may involve walking or standing for brief periods of time." *See* DOT No. 214.362-042. The VE testified that a person with a five pound lifting restriction could perform the job, but he did not explain apparent conflicts with the DOT, such as how such a job would allow for the use of a walker to ambulate while carrying items, or whether the use of a walker would impede Plaintiff's ability to perform at a normal pace. (AR 48.) Accordingly, the Court cannot conclude from the VE's testimony concerning the billing clerk job that the ALJ's error with respect to Dr. Gibson's opinion is inconsequential to the nondisability determination. *See Molina v. Astrue,* 674 F.3d 1104, 1122 (9th Cir. 2012) (a harmless error is one which is "inconsequential to the ultimate nondisability determination in the context of the record as a whole") (citations omitted); *see also Basquez v. Colvin*, 2013 WL 1344941, at *5 (C.D. Cal. Apr. 1, 2013) (finding ALJ's error in ignoring and implicitly rejecting examining

---

*5 (C.D. Cal. June 1, 2015) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986)).

[4] The VE testified that 230,000 billing clerk jobs existed nationally, but that was in response to a different hypothetical that did not include the five pound lifting restriction and the necessity of a walker to ambulate. (AR 47.)

7

physician's opinion not harmless at step five where VE did not explain apparent conflicts with DOT).

Remand is warranted on this issue for the ALJ to properly evaluate Dr. Gibson's opinion.

**B.** **The ALJ Erred In Evaluating Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ erred in discrediting her subjective testimony and statements. (Joint Stip. at 7-14.) The Commissioner argues that the ALJ's reasons for finding Plaintiff not fully credible are supported by substantial evidence. (Joint Stip. at 14-18.) For the reasons set forth below, the Court agrees with Plaintiff.

*1. Plaintiff's Testimony*

At the administrative hearing, Plaintiff testified that she is 56 years old, graduated high school, and took classes at a community college for a year. (AR 35-36.) She also went to dental school while in high school, but she did not get a certificate. (AR 36.) She last worked in 2010 for a temporary agency. (AR 38.) She looked for other work until she fell off her bed, "which started this whole snowball." (*Id.*)

Plaintiff testified that she cannot work because she cannot sit or stand for a long time, she has to lie down when she takes her medication, she gets nauseated, and she sometimes gets dizzy. (AR 39.) She can sit for 5 to 10 minutes before she needs to stand up for 5 minutes or lie down for 15 minutes. (AR 49.) She can stand for 10 to 15 minutes before she needs to sit down or lie down for 10-15 minutes. (AR 49-50.) She can walk from the parking lot to the church foyer, sit in the foyer, and then walk into church and sit in the back so she can stand sometimes. (AR 50.) She can lift, but cannot carry objects and walk. (AR 51.) She cannot walk without a cane, and she tries to avoid walking on uneven surfaces because her legs "give out." (*Id.*) She could walk up a flight of stairs if she "had to," but she would have "a lot of difficulty" and would walk very slowly. (AR 51-52.) Her

8

medication causes her to get "very sleepy and sometimes dizzy" every day for an hour or longer. (AR 52.) She takes her medication every day. (*Id.*)

In a disability report dated August 6, 2012, Plaintiff reported that her ability to work was limited by severe hip and back pain, displacement lumbar disc, constant pain, diabetes, high blood pressure, and high cholesterol. (AR 177.)

In an exertional questionnaire dated September 19, 2012, Plaintiff reported that she suffers from lower back pain, pain in legs from hip to ankles, hip fatigue when she stands too long, and weakness in both legs. (AR 195.) She does not climb stairs. (AR 196.) She can lift about 5-10 pounds, with a pain pill. (*Id.*) She does her own grocery shopping once a month. (*Id.*) She does dishes for about 10 minutes until she has to lie down, sweeps for 5 minutes, and waters the grass until she has to lie down. (*Id.*) She can drive an automatic car. (*Id.*) She rests/naps for 1-2 hours per day. (AR 197.) She uses a walker "all the time," and uses a cane when she does not have the walker. (*Id.*)

Plaintiff completed a function report on December 1, 2012. (AR 201-08.) She reported that she cannot sit or stand for long times, her "back gets tired walking," she has a hard time going from a sitting to standing position, and she cannot "bend and stand from bending." (AR 201.) Her daily activities include showering sometimes with help, eating breakfast, doing some housework (dusting, dishes, sweeping, when able) until her back starts hurting, lying down, taking medication, watching television while lying down, making dinner, and sometimes taking a walk. (AR 202-03.) She does not take care of anyone else or any pets. (AR 202.) She prepares sandwiches, frozen foods, meat, vegetables and eggs. (AR 203.) She can drive a car and can go shopping for food, clothes, shoes, and jewelry. (AR 204.) She goes to church on Sundays "as much as possible," and she sits and talks with others until she has to lie down and take medication. (AR 205.) She uses a cane or a walker on long walks or on uneven ground. (AR 207.) Her pain medication makes her "sleepy at times." (AR 208.)

In various disability reports – appeal in 2013, Plaintiff reported that as of December 1, 2012, she had more pain in her back and legs, weakness of legs, and she needed a walker for support. (AR 210-40.)

### 2. *Applicable Legal Standards*

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112 (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. *Discussion*

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 14.) The ALJ relied on the following reasons: (1) activities of daily living; and (2) lack of supporting objective evidence. (AR 14-15.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

///

///

### a. Reason No. 1: Activities of Daily Living

The ALJ found that Plaintiff had "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 14.) The ALJ noted that Plaintiff stated that she could do housework, make large meals, and care for her dog. (*Id.*) (citing AR 201-08.)

Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility, *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991), but a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). As an initial matter, the ALJ appears to have misrepresented Plaintiff's ability to care for her dog and make large meals. In the function report, cited by the ALJ, Plaintiff indicated that she did not take care of pets or other animals, and that someone helps her "feed and give water to dog." (AR 202.) She also reported that she prepares sandwiches, frozen foods, meat, vegetables and eggs. (AR 203.) In response to the question whether she experienced any changes in cooking habits since her conditions began, she replied, "Yes, I can make large meals with several corses [sic]." (*Id.*) Plaintiff's response to the question about changes in cooking habits is unclear, but given that she also reported that she could not stand for a long time and that she prepares foods such as sandwiches, frozen foods, meat, vegetables and eggs, the ALJ's reliance on her ability to make large meals is not supported by substantial evidence. Even assuming Plaintiff carried on daily activities such as doing limited housework, making large meals, and caring for her dog, such activities do not detract from her overall credibility, as the record does not show that these activities consumed a substantial part of Plaintiff's day. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Further, the mere ability to perform some chores and to prepare meals is not necessarily indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling

environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison*, 759 F.3d at 1016). Indeed, according to Plaintiff, she needs to lie down repeatedly throughout the day, she does activities in 5-10 minute spurts, and naps for 1-2 hours per day. (AR 39, 49-50, 196-97, 202-03.) The ALJ did not discuss these limitations on Plaintiff's daily activities. (AR 14.)

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Lack of Supporting Objective Evidence

The remaining reason for discounting Plaintiff's subjective testimony – lack of supporting objective evidence – cannot form the sole basis for discounting pain testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

The ALJ did not give clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's credibility. Accordingly, remand is warranted on this issue.[5]

---

[5] The Commissioner argues that the ALJ discounted Plaintiff's credibility for an additional reason: Plaintiff was noncompliant with her treatment. (Joint Stip. at 17.) Although the ALJ mentioned that Plaintiff did not refill her prescription for a diabetes medication as directed, the ALJ did not rely on noncompliance with treatment for an adverse credibility finding. (AR 14-15.) Therefore, the Court may not consider this reason. *See Orn*, 495 F.3d at 630.

### C. The Court Declines To Address Plaintiff's Remaining Argument

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ erred in the RFC assessment. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue,* 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

### D. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. On remand, the ALJ shall (1) reassess Dr. Gibson's treating opinion and provide legally adequate reasons for discounting or rejecting any portion of the opinion, including, if warranted, a legally sufficient explanation for discounting Dr.

13

Gibson's opinion regarding Plaintiff's lifting limitation, need for a walker, and ability to work; (2) reassess Plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the record, for discounting or rejecting any testimony; and (3) reassess Plaintiff's RFC, considering Dr. Gibson's opinion and Plaintiff's subjective allegations. The ALJ shall then proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 18, 2016

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

14